## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANCH BANKING AND TRUST COMPANY,** | : | **CIVIL ACTION NO. 1:16-CV-712** |
| | : | |
| | : | **(Chief Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANGINO LAW FIRM, P.C.,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Branch Banking and Trust Company ("BB&T") commenced this breach of contract action against defendants Angino Law Firm, P.C., King Drive Corporation, A La Carte Enterprises, Inc., Blue Mt. Golf Club, Inc., Richard C. Angino, and Alice K. Angino, asserting a loss of $215,937.50. (Doc. 1). Defendants counterclaim for punitive damages and demand a jury trial. (Doc. 17). Presently before the court is BB&T's motion (Doc. 21) to dismiss defendants' counterclaims and to strike the jury trial demand. BB&T argues that defendants are barred under the gist of the action doctrine from recovering punitive damages and that defendants waived their right to a jury trial in express contract provisions. (See Doc. 23). Defendants contend that BB&T's purportedly "outrageous" conduct merits an award of punitive damages and that they never voluntarily waived a jury trial demand. (See Doc. 24). For the reasons that follow, the court will grant BB&T's motion.

I.     **Factual Background & Procedural History**

Defendants Richard C. Angino and Alice K. Angino (the "Anginos") are residents of Pennsylvania.  (Doc. 1 ¶ 8; Doc. 17 ¶ 8).  The Anginos state that in 2006 Graystone Bank became their bank and provided funding for their corporations, the four corporate defendants.  (Doc. 1 ¶¶ 4-7; Doc. 17 ¶¶ 4-7, 26, 33).  Graystone Bank was acquired by Susquehanna Bank in February 2012, and BB&T succeeded in the interest of Susquehanna Bank sometime before 2016.  (Doc. 1 ¶ 3; Doc. 17 ¶¶ 43, 64-67).  The court will refer to these banks collectively as "BB&T."

The Anginos and BB&T have entered into numerous loan agreements since 2006.  (Id. ¶¶ 26-60).  BB&T specifically claims damages based on a term loan note signed on February 22, 2013, suretyship agreements guaranteeing that loan, and loan modification documents to the term loan note.[1]  (Doc. 1 ¶¶ 9-16, 19, 24).  All parties are *ad idem* on the existence of the loan agreements.  (Doc. 1 ¶¶ 9-16; Doc. 17 ¶¶ 9-16).  BB&T states that the term loan matured on February 28, 2016 and, as of April 19, 2016, the Anginos owed $215,937.50 to BB&T.  (Doc. 1 ¶¶ 16, 19).

BB&T commenced this action on April 28, 2016.  (Doc. 1).  BB&T seeks the aforementioned damages under breach of contract, as well as accrued interest.  (Id. ¶¶ 19-24).  Defendants filed their answer and counterclaims on June 2, 2016.  (Doc. 17).  They aver that on May 6, 2016, after commencing this action, BB&T

---

[1] In a separate civil action pending in this court, BB&T claims damages for breach of a different term loan note executed on February 15, 2007.  Branch Banking & Trust Co. v. Angino Law Firm, P.C., No. 1:16-CV-713 (M.D. Pa.). Defendants filed identical counterclaims in that case, and BB&T moved to dismiss on grounds similar to those addressed herein.  That motion is resolved by separate opinion issued on today's date.

misappropriated social security funds from the Anginos' personal checking account as well as pension funds from the Angino Law Firm and King Drive Corporation checking account (the "corporate account").  (Id. ¶¶ 70-72).  This withdrawal caused the accounts to be overdrawn, and the Anginos purportedly did not have sufficient funds to pay creditors and an employee.  (Id. ¶ 73).  The Anginos acknowledge that the funds were returned, but claim that the incident damaged their reputation.  (Id. ¶ 77).

On June 22, 2016, BB&T filed the instant motion (Doc. 21) to dismiss these counterclaims and to strike defendants' jury trial demand.  The motion is fully briefed (Docs. 22-25) and ripe for disposition.

## II.   <u>Legal Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).  In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

3

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips</u>, 515 F.3d at 232 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry.  <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  <u>Id.</u> at 130 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  <u>Id.</u> at 131; <u>see</u> <u>also</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550 U.S. at 555.  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.

Under Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Fᴇᴅ. R. Cɪᴠ. P. 12(f).  District courts have "considerable discretion" in resolving a Rule 12(f) motion.  <u>Krisa v. Equitable Life Assurance Soc'y</u>, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (quoting <u>N. Penn. Transfer, Inc. v. Victaulic Co. of Am.</u>, 859 F. Supp. 154, 158 (E.D. Pa. 1994)).  In general, such a motion will be denied unless the allegations are severely prejudicial to one of the parties and unrelated to the plaintiff's

4

claims.  Id.; see also 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE &

PROCEDURE § 1382 (3d ed. 2016).  A party is prejudiced when the challenged

pleading "confuses the issues" or places an undue burden on the responding

party.  Karpov v. Karpov, 307 F.R.D. 345, 348 (D. Del. 2015).

## III.  **Discussion**

BB&T challenges defendants' counterclaims and jury trial demand.  (See

Doc. 21).  The court will address these issues *seriatim*.

### A.    **Defendants' Counterclaim Based Upon the Removal of Funds from the Anginos' Personal Account**

The Anginos seek to recover punitive damages, alleging that BB&T

improperly removed funds from their personal account.  (Doc. 24 at 9).  BB&T

argues that the Anginos' punitive damages claim is barred by the gist of the action

doctrine.  (Doc. 25 at 3-6).

Under Pennsylvania law, the gist of the action doctrine bars tort claims when

"the true gravamen, or, gist, of the claim sounds in contract."  Dommel Props., LLC

v. Jonestown Bank & Trust Co., 162 F. Supp. 3d 438, 443 (M.D. Pa. 2016)

(quoting Dommel Props., LLC v. Jonestown Bank & Trust Co., 626 F. App'x 361,

364 (3d Cir. 2015)).  A breach of contract may give rise to a tort claim, but the tort

claim must be the "gist of the action" and the contract collateral for a tort claim to

be viable.  Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 548 (3d

Cir. 2010).  A tort claim that is grounded in obligations that arise from a social policy

outside of the contract may coexist with a breach of contract claim.  Bohler-

Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 105 (3d Cir. 2001).  The

nature of the allegedly breached duty is the decisive factor:  if the duty would not exist without the contract, then the claim sounds in contract alone.  <u>Bruno v. Erie Ins. Co.</u>, 106 A.3d 48, 68 (Pa. 2014).  Under Pennsylvania law, a party cannot recover punitive damages based solely on breach of contract.  <u>DiGregorio v. Keystone Health Plan E.</u>, 840 A.2d 361, 370 (Pa. Super. Ct. 2003) (citing <u>Thorsen v. Iron & Glass Bank</u>, 476 A.2d 928, 932 (Pa. Super. Ct. 1984)).

The Anginos' claim falls squarely within the purview of the gist of the action doctrine.  The Anginos' allegation that BB&T engaged in tortious "outrageous conduct" is mere *ipse dixit*.  (Doc. 24 at 9).  The Anginos identify no social obligation or duty existing outside the contract that BB&T allegedly violated.  <u>See</u> <u>Bohler-Uddeholm Am., Inc.</u>, 247 F.3d at 105; <u>Bruno</u>, 106 A.3d at 68.  BB&T's actions clearly stemmed from BB&T's perceived contractual right to setoff under the loan agreements.  (Doc. 23 at 8-9; Doc. 25 at 5).  The disagreement is purely one of contract:  BB&T posits that the loan agreements authorized their setoff; the Anginos disagree.  (Doc. 24 at 9, 13-14; Doc. 25 at 6).

The gist of the action doctrine exists to prevent defendants from manufacturing tort claims in contract disputes such as this.  The court concludes that the Anginos have no basis for punitive damages.  <u>See</u> <u>DiGregorio</u>, 840 A.2d at 370.  Defendants' counterclaim for punitive damages based on BB&T's setoff against the Anginos' personal account will be dismissed.

## B.   Defendants' Counterclaim Based Upon the Removal of Funds from the Corporate Account

Our analysis of defendants' second claim is more nuanced, but the claim ultimately suffers the same fate.  The Anginos argue that BB&T was not entitled to a setoff against their corporate account.  (Doc. 24 at 6).  The Anginos state that they used the corporate account for pension and profit-sharing purposes, implying that the bank has a fiduciary duty independent of the contract regarding said account. (Doc. 24 at 9).

In Pennsylvania, a bank has a common law right to setoff against a deposit account.  See Pioneer Commercial Funding Corp. v. Am. Fin. Mortg. Corp., 855 A.2d 818, 824 (Pa. 2004); see also 13 PA. STAT. AND CONS. STAT. ANN. § 9340.  The right to setoff arises when (1) mutuality of obligation exists between depositor and bank; (2) the concerned funds belong to the depositor; (3) the funds are in a general, not special purpose, account; and (4) the debt owed to the bank has matured.  In re Szymanski, 413 B.R. 232, 245 (Bankr. E.D. Pa. 2009) (citing Royal Bank of Pa. v. Selig, 644 A.2d 741, 744-45 (Pa. Super. 1994)).  However, a bank cannot exercise this right if the proposed setoff funds belong to third persons and if the bank is on notice that the depositor is an agent or fiduciary.  See Pioneer Commercial Funding Corp., 855 A.2d at 825 n.15 (citing Sherts v. Fulton Nat. Bank of Lancaster, 321 A.2d 18, 20 (1941)).  If an attorney acts as an agent or fiduciary, the attorney whose name is on the account is held responsible for identifying the account as a trust account.  PA. R. DISCIPLINARY ENF'T 221(d); PA. R. PROF'L CONDUCT 1.15(g).

7

BB&T and defendants entered into loan agreements, which have matured. (Doc. 1 ¶¶ 9-16; Doc. 17 ¶¶ 9-16).  Hence, the second and third elements of the right to setoff are in question.  The Anginos claim that the funds in the concerned corporate "checking" account belong to employees of the Angino Law Firm and King Drive Corporation.  (Doc. 17 ¶ 70).  The Anginos also claim that the corporate account has been used as a pension and profit-sharing account and that BB&T "mischaracterized this account."  (Doc. 24 at 9).  Based on these *allegata*, defendants assert that BB&T breached a fiduciary duty to third parties when it removed funds from the corporate account.  (Doc. 17 ¶ 70; Doc. 24 at 9-10).

The Anginos and their corporations fail to state an independent tort claim on these facts.  The Anginos do *not* aver that the account in question is designated as a special account, such as an employee pension trust.  There is no clear allegation that the Anginos presently acted as custodians of the account or as fiduciaries or agents of a third party with respect to the funds at issue.  Indeed, there is no statement from which the court could conclude that the subject account was owned by any entity other than the Angino Law Firm or King Drive Corporation.  (Doc. 24 at 9).  The account is categorized by the financial institution as a general checking account.  (Doc. 17 ¶ 70).  Moreover, according to legal professional standards, Richard C. Angino is required to specifically identify and designate all trust or fiduciary accounts held by him as an attorney agent.  <u>See</u> PA. R. DISCIPLINARY ENF'T 221(d); PA. R. PROF'L CONDUCT 1.15(g). That the account contained commingled assets for both corporations further demonstrates that the bank was unaware of an

equitable ownership claim by a third party.  See Pioneer Commercial Funding Corp., 855 A.2d at 825-830; (Doc. 17 ¶ 70; Doc. 25 at 7).

Defendants fail to plead any facts suggesting that BB&T breached a third-party fiduciary duty.  See In re Szymanski, 413 B.R. at 245.  The Anginos and their corporations therefore cannot establish a tort claim separate from BB&T's contractual duties.  Bohler-Uddeholm Am., Inc., 247 F.3d at 105; Bruno, 106 A.3d at 68.  Defendants' counterclaim regarding BB&T's right to setoff against the corporate account is barred by the gist of the action doctrine. [2]

### C.      Waiver of Jury Trial

BB&T seeks to strike the jury trial demand from defendants' answer.  (Doc. 21 ¶¶ 13-15).  Defendants allege that they did not voluntarily waive their right to a jury trial.  (Doc. 24 at 10-12).  BB&T rejoins that waivers of the right to jury trial were explicitly delineated in the loan agreements, and that each defendant knowingly waived this right.  (Doc. 23 at 23).

A party may waive the constitutional right to a jury trial if the party does so voluntarily and knowingly.  First Union Nat. Bank v. United States, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001).  Courts weigh different factors in this determination, including whether (1) gross disparity in bargaining power existed between the parties; (2) the parties are sophisticated in business matters; (3) the parties had the opportunity to negotiate; and (4) the waiver provision was conspicuous.  Id.

---

[2] BB&T contends that the Anginos waived claims for punitive damages. (Doc. 25 at 2).  The court need not comment on the possibility of waiver of punitive damages in the case sub judice, as defendants' two requests for punitive damages are barred by the gist of the action doctrine.

Mutuality of waiver suggests that there was not a disparity in bargaining power.  U.S. Bank, Nat. Ass'n v. Rosenberg, No. 12-723, 2014 WL 2439427, at *2 (E.D. Pa. May 30, 2014).  Representation by an attorney weighs in favor of the waiver being voluntary.  See id.; Phoenix Four Grantor Trust #1 v. 642 N. Broad St. Assocs., No. 00-597, 2000 WL 1717261, at *2 (E.D. Pa. Nov. 15, 2000).

The court concludes that the relevant factors weigh heavily in favor of waiver.  The Anginos contend that there was a gross disparity in bargaining power and a lack of negotiation due to defendants' financial position, (Doc. 24 at 11), but these contentions are *ipse dixit*.  This contention is refuted by the record.  BB&T allowed modification of the loan to extend the date of maturity.  (Doc. 1 ¶¶ 14-15; Doc. 17 ¶¶ 14-15).  The jury waivers were mutual.  See Rosenberg, 2014 WL 2439427, at *2; (Doc. 23-2 at 7, 18, 29, 34, 39, 43, 49, 62).  Defendants' averment that the recession caused financing to be scarce and banks to act with impunity, (Doc. 24 at 10-13), fails to acknowledge Richard C. Angino's abilities, as an attorney and sophisticated businessman, to negotiate and understand contracts.  See Phoenix Four Grantor Trust #1, 2000 WL 1717261, at *2; (Doc. 25 at 8).  Finally, the court observes that the jury waivers in the loan agreements are quite conspicuous.  (Doc. 23 at 21-22; Doc. 23-2 at 7, 18, 29, 34, 39, 43, 49, 62).  *In toto*, the court finds that the facts and circumstances of the instant matter weigh in favor of striking the jury trial demand in defendants' answer.

IV.    **<u>Conclusion</u>**

The court will grant BB&T's motion (Doc. 21) to dismiss counterclaims and

strike the jury trial demand.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:    December 7, 2016