**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANCH BANKING AND TRUST COMPANY,** | : | **CIVIL ACTION NO. 1:16-CV-712** |
| | : | |
| | : | **(Chief Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANGINO LAW FIRM, P.C.,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

| | | |
|---|---|---|
| **BRANCH BANKING AND TRUST COMPANY,** | : | **CIVIL ACTION NO. 1:16-CV-713** |
| | : | |
| | : | **(Chief Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANGINO LAW FIRM, P.C.,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Branch Banking and Trust Company ("BB&T") commenced separate breach of contract actions against defendants Angino Law Firm, P.C., King Drive Corp., A La Carte Enterprises, Inc., Blue Mountain Golf Club, Inc., Richard C. Angino, and Alice K. Angino (collectively, "defendants"). Defendants admitted liability and a bench trial convened on the limited issue of BB&T's damages, resulting in a verdict in BB&T's favor. Defendants have filed numerous post-trial motions for relief, which we will deny.

## I.    Factual Background & Procedural History[1]

On September 17, 2018, after a nonjury trial on damages, we issued a memorandum setting forth our findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).  See generally Branch Banking & Tr. Co. v. Angino Law Firm, P.C., Nos. 1:16-CV-712, 1:16-CV-713, 2018 WL 4404627 (M.D. Pa. Sept. 17, 2018).  The detailed factual and procedural history of this case is outlined in that opinion, familiarity with which is presumed.  See id. at *1-6.  We concluded, *inter alia*, that BB&T's claimed damages for late charges, appraisal fees, and attorneys' fees and costs were supported by a preponderance of the evidence. Id. at *6-10.  Accordingly, we awarded damages in the following amounts: $9,161.56 for late charges; $14,000.00 for appraisal fees; $163,865.30 for attorneys' fees; and $5,431.94 for costs.  Id. at *10.

Shortly thereafter, defendants filed a series of motions attacking portions of the judgment.  Defendants move for "reconsideration *en banc* and/or a new trial," (Doc. 70), for recusal, (Doc. 74), to "reopen the dockets and remove judgments," (Doc. 75), and to "strike and/or vacate judgments," (Doc. 85).[2]  These motions, although styled differently, all raise the same arguments attacking the judgment as

---

[1] Citations to the record include the transcript of trial convened on June 19, 2018 ("Trial Tr. __"), and BB&T's trial exhibits ("Ex. P-__").

[2] Duplicate post-trial motions were filed in case numbers 1:16-CV-712 and 1:16-CV-713.  The motions appear at identically numbered docket entries in each case.

it relates to late charges, appraisal fees, and attorneys' fees and costs. The motions are fully briefed and ripe for disposition.

## II.  Legal Standards

### A.  Motion for Reconsideration

Unless otherwise characterized, a motion for reconsideration of a final order is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). Wiest v. Lynch, 710 F.3d 121, 127 (3d Cir. 2013) (quoting Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir. 1986)). Such a motion must rely on at least one of the following grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Id. at 128 (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)); see Max's Seafood Café v. Quinteros, 176 F.3d 669, 677-78 (3d Cir. 1999); Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). A party may not invoke Rule 59(e) to "relitigate old matters" or present previously available arguments or evidence. See Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008) (citation omitted); 9C Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 2582 (3d ed. 2018); 11 Wright & Miller, *supra*, § 2810.1.

### B.  Motion for New Trial under Rule 59(a)

Federal Rule of Civil Procedure 59(a)(1)(B) permits the court, following a bench trial, to grant a new trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). The standard for seeking a new nonjury trial is similar to, and equally

as demanding as, requesting relief under Rule 59(e).  Motions under Rule 59(a)(1)(B) "should be based upon manifest error of law or mistake of fact," and a judgment in a nonjury trial should be set aside only for "substantial reasons."  11 WRIGHT & MILLER, *supra*, § 2804; Ball v. Interoceanica Corp., 71 F.3d 73, 76 (2d Cir. 1995) (citation omitted); Robertshaw v. Pudles, No. 11-7353, 2014 WL 1789307, at *5 (E.D. Pa. May 6, 2014) (citations omitted); Glemser v. United States, No. 06-1961, 2010 WL 1688544, at *1 (D.N.J. Apr. 26, 2010) (citations omitted).  On motion for a new trial under Rule 59(a)(2), the court may reopen the judgment, take additional testimony, amend or render new findings or conclusions, and direct the entry of a new judgment.  FED. R. CIV. P. 59(a)(2).

III.  **Discussion**

Most of defendants' motions, while labeled differently, essentially seek the same relief.  Defendants primarily take issue with the award of attorneys' fees, arguing that they are excessive and unreasonable.  We address defendants' motion for recusal before turning to the motions attacking portions of the judgment.

A.  **Motion for Recusal**

Under 28 U.S.C. § 455, a judge must recuse "in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Reasons for mandatory disqualification include, *inter alia*, personal bias or prejudice toward a party, financial interest in the outcome of the proceeding, family members' involvement in the case, and a prior employment relationship with an attorney litigating the matter.  See id. § 455(b)(1)-(5).  After a trial has been conducted, "a motion for recusal of a trial judge should be supported by *substantial justification,*

not fanciful illusion." <u>Martin v. Monumental Life Ins. Co.</u>, 240 F.3d 223, 237 (3d Cir. 2001) (emphasis added).

Defendants' motion for recusal is woefully deficient. The motion itself is predominantly devoted to argument regarding attorneys' fees. In a single paragraph on the final page, defendants baldly assert that this court "has shown bias and prejudice towards Defendants in this case" insofar as the court "simply disregarded binding authority and gave BB&T and its attorneys everything requested." (Doc. 74 ¶ 17). Defendants' brief does not help their cause, arguing that the court's "impartiality in this case is in serious doubt" because it awarded BB&T legal fees that defendants believe are unreasonable and ignored "controlling law" in doing so. (Doc. 76 at 6-8). These are not arguments for recusal; they are arguments about the appropriateness of attorneys' fees. Because defendants have identified no basis or support for recusal, let alone substantial justification, we will deny this motion.

**B.    Motions Attacking Judgment**

Defendants' requests for reconsideration or alternatively a new trial and to remove or vacate judgment are largely based on the same arguments regarding attorneys' fees. Defendants style some of their motions as seeking *vacatur* of judgment, which could possibly implicate Federal Rule of Civil Procedure 60(b), but defendants' motions do not invoke Rule 60(b) or its standards and are substantively

identical to the motion for reconsideration or a new trial.[3]  Because the controlling standards for reconsideration and for a new nonjury trial are similar, and because defendants' motions raise duplicative arguments, we will address the remaining motions together.

Defendants proffer a litany of theories as to why the award of attorneys' fees was erroneous.  They claim that multiple bases for reconsideration exist, including "an intervening change in controlling law, manifest errors of law and fact, and a grave injustice."  (Doc. 79 at 9-10).  We disagree and briefly explain why none of defendants' claims warrants relief.

### 1.    *Contract Interpretation – Permissible Fees*

Defendants contend that the award of attorneys' fees was improperly inflated because BB&T sought and received reimbursement for legal work that was not compensable under the terms of the loan agreements.  Defendants maintain that the only permissible attorneys' fees were those related to "collection" on the line of

---

[3] Defendants raise one additional argument in their motions to "remove" or "vacate" judgment.  They assert that it was error for the court to enter judgment at the same time we issued our memorandum and order—following bench trial—resolving all outstanding issues in these cases.  Defendants posit that, before entering judgment and closing the cases, the court should have waited for the time to elapse in which defendants could file a motion for reconsideration or move for a new trial.  Defendants fundamentally misunderstand how Rule 59 operates.  A motion for reconsideration under Rule 59(e) explicitly requires "entry of [] judgment" as a precondition to filing.  See FED. R. CIV. P. 59(e).  A motion for a new trial under Rule 59(a) can be filed before or after judgment is entered.  See FED. R. CIV. P. 59(a), (b).  If the court elected to forgo the entry of judgment until a party moved for reconsideration or a new trial, the time limits for filing such motions would never come to pass.  See FED. R. CIV. P. 59(b), (e) (requiring motions for a new trial and for reconsideration be filed "no later than 28 days after the entry of [] judgment").

credit note.  (See Doc. 71 at 3, 13-17; Doc. 79 at 15-16).  This contention is belied by the plain language of the numerous contracts at issue.

Defendants have already raised this argument in pretrial and post-trial memoranda and during trial, (see Doc. 36 at 6-12; Doc. 67 at 9-16; Trial Tr. 104:10-105:20), and we rejected it in our Rule 52 opinion, see Branch Banking & Tr. Co., 2018 WL 4404627, at *7.  A motion for reconsideration under Rule 59(e) is not a tool to relitigate or reargue issues previously considered and resolved.  See Exxon Shipping Co., 554 U.S. at 485 n.5 (citation omitted); 9C WRIGHT & MILLER, *supra*, § 2582; 11 WRIGHT & MILLER, *supra*, § 2810.1.

We have little to add to our Rule 52 opinion regarding this meritless claim. We have already set forth the relevant portions of the line of credit note and its related surety and guaranty agreements, the term loan note and its various guaranty agreements, and the forbearance agreement.  See Branch Banking & Tr. Co., 2018 WL 4404627, at *1-4.  Those provisions expressly permit recovery of attorneys' fees incurred for, *inter alia*, "collect[ion]" on the line of credit note "whether or not there is a lawsuit"; "enforcement" of the commercial security and guaranty agreements "whether or not there is a lawsuit"; "enforcing [BB&T]'s rights with respect to the" term loan note or "any collateral that is security" for the note; and "preparation, negotiation, and/or implementation" of the forbearance agreement and for work "otherwise related" to defendants' obligations or loan documents.  Id.  This broad, unambiguous language permits recovery of attorneys' fees for nearly any legal task associated with enforcing BB&T's rights under the loan contracts, regardless of whether litigation is required.  We thoroughly

reviewed BB&T's itemized request for attorneys' fees and found that the legal work therein was unquestionably covered by the plain language of the agreements. See id. at *7-9. Defendants' regurgitated argument that recoverable attorneys' fees should be limited to collection-related litigation is directly contradicted by the terms of the agreements they executed.

### 2. *Alleged Intervening Change in Controlling Law*

Defendants next assert that after we issued our Rule 52 opinion, there was a change in "controlling law" regarding attorneys' fees. They cite Clemens v. New York Mutual Fire Insurance Co., 903 F.3d 396 (3d Cir. 2018), and Young v. Smith, 905 F.3d 229 (3d Cir. 2018).[4] Defendants claim that these cases altered the law governing a court's review of attorney-fee requests. Defendants are incorrect.

Nothing in Clemens or Young changed the method by which courts are to review and assess the reasonableness of petitions for attorneys' fees. The only substantive holdings from these cases that could be considered "changes" in controlling law are not germane to the instant matter. In Clemens, the Third Circuit held that a district court did not abuse its discretion by denying *in toto* a fee petition brought under Pennsylvania's Bad Faith Statute, 42 PA. CONS. STAT. § 8371, when the amount requested was "outrageously excessive." Clemens, 903 F.3d at 402-03. And in Young, the court applied the reasoning in Clemens and concluded

---

[4] Defendants also cite Mozingo v. Oil States Energy Services, LLC, No. 15-529, 2018 WL 4473345 (W.D. Pa. Sept. 18, 2018), appeal filed, No. 18-3134 (3d Cir. Sept. 27, 2018). Mozingo requires no discussion because it is an unreported decision from the United States District Court for the Western District of Pennsylvania and is not "controlling" authority.

that a fee petition pursuant to 42 U.S.C. § 1988(b) may be denied in its entirety when "the request is so outrageously excessive that it shocks the conscience of the court." Young, 905 F.3d at 235-36. These holdings are irrelevant to the case *sub judice* because BB&T's fees were reasonable and supported by a preponderance of the evidence. Furthermore, the factual situations underlying Clemens and Young have no similarities to the case at bar, as those cases dealt with outrageous petitions seeking grossly excessive fees in relation to the actual work required. See Clemens, 903 F.3d at 398-99 ($946,526.43 claimed for motor vehicle accident insurance claim); Young, 905 F.3d at 231-33 ($733,002.23 claimed for civil rights case in which petitioning attorney's own misconduct caused second trial). BB&T, *per contra*, was awarded approximately $164,000.00 for relevant legal work performed over the course of five years, which included loan modification and enforcement, collateral protection, filing suit, pretrial motion practice, discovery, trial preparation, and trial. Clemens and Young have no bearing on this case and provide no basis for reconsideration.

### 3. *Alleged Errors of Law or Fact*

In defendants' *third* supplemental brief in support of its motion for reconsideration or a new trial, they posit that BB&T should not have been awarded appraisal and late fees because those fees were never assessed by BB&T's predecessors-in-interest. Defendants assert multiple theories to support this claim, including estoppel, ratification, and waiver. They raised similar arguments in their pretrial memorandum, (see Doc. 36 at 12-19), but did not press them at trial or in post-trial briefing. Defendants' post-trial brief mentions only waiver, but does not

support this claim with argument, citation to the record, or legal authority. (<u>See</u> <u>generally</u> Doc. 67 at 8-20).

To the extent defendants did not abandon these arguments, they are wholly without merit. As to estoppel, while defendants may have relied on the non-assessment of appraisal fees by BB&T's predecessors, they do not establish why that continued reliance was justified when the forbearance agreement—executed in 2014—specifically permitted BB&T to charge defendants for appraisals on collateral. <u>See</u> <u>Branch Banking & Tr. Co.</u>, 2018 WL 4404627, at *5, 6. Defendants also fail to show detriment caused by their alleged reliance. They claim only that they have been "greatly prejudiced by BB&T's actions," (<u>see</u> Doc. 92 at 7), which is insufficient to establish detriment that would require estoppel. "Ratification" of prior agreements is even less apt. The contract that expressly permits recoupment of appraisal fees—the forbearance agreement—was signed in January 2014, and all the assessed appraisals occurred following its execution.

As for waiver, that argument is likewise frivolous. Waiver is "the intentional relinquishment of a known right." <u>Stoner v. Stoner</u>, 819 A.2d 529, 532 n.4 (Pa. 2003) (citation omitted); RESTATEMENT (SECOND) OF CONTRACTS § 84 cmt. b (AM. LAW INST. 1981). Waiver does not apply because, although BB&T and its predecessors waived some past fees, the late charges and appraisal fees sought in the instant litigation were explicitly not waived. As we observed in our Rule 52 opinion, BB&T's representative credibly testified that whatever late charges and appraisal fees BB&T assessed and included as damages in the instant litigation had not been waived. <u>See</u> <u>Branch Banking & Tr. Co.</u>, 2018 WL 4404627, at *5 (citing (Trial Tr.

32:19-33:9, 35:4-36:9, 58:23-59:21, 61:3-21, 62:24-63:8, 101:16-20)).  Prior waiver of a contractual right, especially one that is periodic or recurring, does not constitute permanent waiver of that right.  See Mun. Auth. of Westmoreland Cty. v. CNX gas Co., No. 2:16-CV-422, 2019 WL 1427155, at *4-5 (W.D. Pa. Mar. 29, 2019) (Conner, C.J.) (citing 13 WILLISTON ON CONTRACTS § 39:20 (4th ed. 1993); Daniels v. Phila. Fair Hous. Comm'n, 513 A.2d 501, 502-03 & n.3 (Pa. Commw. Ct. 1986)).  Consequently, even assuming BB&T's predecessors-in-interest did not charge defendants certain contractually permitted fees, this does not mean that BB&T cannot seek strict prospective compliance with the agreements and collect newly incurred fees it decides not to waive.

Finally, many of defendants' post-trial motions attack BB&T's fee petition, (Ex. P-K), asserting that the court erred in its review and acceptance of BB&T's request.  Defendants repeatedly claim that it consists of "22 pages of small print, single spaced, vague, and irrelevant entries" and thus should be reduced or "stricken in whole."  (See Doc. 70 ¶¶ 23, 31; Doc. 72 at 6; Doc. 76 at 7; Doc. 79 at 11, 21-23; Doc. 86 at 5; Doc. 92 at 3, 5).  We have already carefully reviewed BB&T's fee request and found that it is reasonable with regard to both billing rate and hours expended.  See Branch Banking & Tr. Co., 2018 WL 4404627, at *8-9.  We reiterate that BB&T's organized and well-documented fee petition contains neither vague nor irrelevant entries, and that this case by no means warrants comparison to Clemens or Young.  There was no error of law or fact in our Rule 52 opinion as to the reasonableness or appropriateness of BB&T's claimed attorneys' fees and costs.

## III.   **Conclusion**

For all the foregoing reasons, we will deny defendants' post-trial motions, (Docs. 70, 74, 75, 85).  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:    May 9, 2019